1  Mark E. Ellis - 127159
   Amanda N. Griffith – 288164
2  ELLIS LAW GROUP LLP
   740 University Avenue, Suite 100
3  Sacramento, CA 95825
   Tel: (916) 283-8820
4  Fax: (916) 283-8821
   mellis@ellislawgrp.com
5  agriffith@ellislawgrp.com

6  Attorneys for Defendant FINANCIAL CREDIT NETWORK

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  JAMIL LITTLEJOHN,                    Case No.: 2:15-cv-09780 JAK KS

12       Plaintiff,                      **DEFENDANT FINANCIAL CREDIT
                                         NETWORK, INC.'S MEMORANDUM
13  v.                                   OF CONTENTIONS OF LAW AND
                                         FACT**
14  FINANCIAL CREDIT NETWORK, INC.,

15       Defendant.                      **Pre-Trial:      January 23, 2017**
                                         **Time:           3:00 p.m.**
16                                       **Courtroom:      10B**

17
                                         **Trial Date:     January 31, 2017**
18
                                         **HONORABLE JOHN A. KRONSTADT**
19

20

21       Pursuant to Local Rule 16-4 and the Court's April 4, 2016 Scheduling Order,

22  Defendant FINANCIAL CREDIT NETWORK, INC. ("FCN") hereby submits its pre-

23  trial Memorandum of Contentions of Fact and Law.

24

25  //

26  //

27  //

28  //

- 1 -

DEFENDANT FINANCIAL CREDIT NETWORK, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND
FACT

**1.      Claims and Defenses**

**(a)      Summary of claims plaintiff has pleaded.**

**Claim 1:**   Defendant violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 et seq. by calling Plaintiff's cellular telephone with an automatic telephone dialing system without prior express consent and/or after Plaintiff revoked consent to be called.

**Claim 2:**  Defendant violated 15 U.S.C. § 1692d of the FDCPA by placing harassing telephone calls to Plaintiff.

**Claim 3:**   Defendant violated 15 U.S.C. § 1692d(5) by calling Plaintiff continuously or repeatedly with the intent to harass Plaintiff.

**Claim 4:**   Defendant violated 15 U.S.C. § 1692f by using unfair or unconscionable means to attempt to collect a debt.

**Claim 5:**  Defendant violated 15 U.S.C. § 1692c(a)(2) by calling Plaintiff after it knew Plaintiff was represented by counsel with respect to the debt.

**Claim 6:**  Defendant violated California Civil Code §1788.17 by violating the federal FDCPA.

**(b)      Elements required to establish plaintiff's claims.**

Elements Required to Establish Plaintiff's Claim Under
the TCPA

1. Defendant made a call with and "automatic telephone dialing system;"

2. To Plaintiff's cellular telephone;

3. Without prior express consent.[1]

---

[1] Whether consent is an element of Plaintiff's case or an affirmative defense is an open issue. *Compare Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Baird v. Sabre Inc.*, 995 F. Supp. 2d 1100, 1101 (C.D. Cal. 2014) and *Grant v. Capital Management Services, L.P.*, 449 Fed. Appx. 598, 600 n. 1 (9th Cir. Sept. 2, 2011).

<u>Elements Required to Establish Plaintiff's Claim Under</u>
<u>15 U.S.C. § 1692d</u>

1.  Defendant is a debt collector;

2.  Plaintiff is a consumer;

3.  Defendant was attempting to collect a debt; and

4.  Defendant engaged in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff.

<u>Elements Required to Establish Plaintiff's Claim Under</u>
<u>15 U.S.C. § 1692d(5)</u>

1.  Defendant is a debt collector;

2.  Plaintiff is a consumer;

3.  Defendant was attempting to collect a debt;

4.  Defendant caused a telephone to ring or engaged plaintiff in telephone conversation repeatedly or continuously; and

5.  Defendant *intended* to annoy, abuse, or harass Plaintiff.

<u>Elements Required to Establish Plaintiff's Claim Under</u>
<u>15 U.S.C. § 1692f</u>

1.  Defendant is a debt collector;

2.  Plaintiff is a consumer;

3.  Defendant was attempting to collect a debt; and

4.  Defendant used unfair or unconscionable means to attempt to collect the debt.

<u>Elements Required to Establish Plaintiff's Claim Under</u>
<u>15 U.S.C. § 1692c(a)(2)</u>

1.  Defendant is a debt collector;

2.  Plaintiff is a consumer;

- 3 -

3.  Defendant knew plaintiff was represented by counsel with respect to the debt in question; and

4.  Defendant communicated directly with plaintiff after it knew plaintiff was represented by counsel with respect to the debt.

<u>Elements Required to Establish Plaintiff's Claim Under
Civil Code § 1788.17</u>

1.  Defendant is a debt collector;

2.  Plaintiff is a consumer;

3.  Defendant was attempting to collect a debt;

4.  Defendant violated the FDCPA.

<u>Article III Standing</u>

In addition to the above enumerated elements, for each one Plaintiff's specific claims, Plaintiff must also establish Article III standing for each alleged claim. *DaimlerChrysler Corp. v. Cino*, 547 U.S. 332, 352 (2006) ["...a plaintiff must demonstrate standing for each claim he seeks to press."]; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ["The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof."].

"[T]he 'irreducible constitutional minimum' standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) *citing Lujan, supra*, 504 U.S. at 560-561.

//

//

//

- 4 -

As recently summarized by the Southern District of California, in a similar TCPA case:

> The first element, injury in fact, "is a constitutional requirements, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing. *Spokeo, supra*, 136 S.Ct. at 1547-1548. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' this is 'concrete and particularized' and 'actual or imminent, not conjectural and hypothetical.'" *Id* (additional citations omitted). 'For an injury to be "particularized", it 'must affect the plaintiff in a personal and individual way.'" *Id* (additional citations omitted). "Meanwhile, a concrete injury must be '*de facto*'; that is, it must actually exist". *Id* (additional citations omitted). Therefore, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires concrete injury even in the context of a statutory violation." *Id.* A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

*Romero v. Department Stores National Bank*, -- F.Supp.3d. --, 2016 WL 418099 at *2 (S.D.Cal. 2016).

Article III standing applies to Plaintiff's alleged state law claims, as well as those arising under this Court's federal question jurisdiction. *Lee v. American National Insurance Co.*, 260 F.3d. 997, 1001- 1002 (9th Cir. 2001) ["So a plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury."]; *In re Capacitors Antitrust Litigation*, 154 F.Supp.3d 918, 925-926 (N.D.Cal. 2015) ["This is a key point because the Article III standing requirement is a constitutional limitation that applies to all claims litigated in federal court whether based on federal or state law."].

//

- 5 -

**(c)    Evidence in opposition to plaintiff's claims.**

Plaintiff's Claim Under TCPA

1)    <u>FCN did not call Plaintiff with an ATDS</u>.  Under the plain language of the statue, an automatic telephone dialing system is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. § 227(a)(1).  FCN does not call random or sequential telephone numbers.  FCN's dialer works off of a curated list of telephone numbers uploaded to the dialer to be called.  The dialer does not use or have a random or sequential number generator.

2)    <u>FCN had prior express consent to call Plaintiff's cellular telephone</u>.  Plaintiff admits that he provided his cellular telephone number to the creditor, Park Water Co., in connection with his account.  (Exh. 7: Response to Request For Admission No. 2.)  It was a debt arising from this account that was basis for FCN's calls to Plaintiff.  As such, FCN, the agent for Park Water Co., had prior express consent to call the number.

The FCC, pursuant to its rulemaking and interpretative authority under the TCPA, has issued a number of guiding orders defining prior express consent.  *See Hudson v. Sharp Healthcare*, 2014 WL 2892290 *3 (S.D. Cal. 2014).  In short, the FCC has clarified that when a person provides their cellular telephone number to a business for use in communicating with that business regarding a transaction between the consumer and the business, the consumer has provided prior express consent to be called on that number.  The FCC has ruled:

> [P]ersons who knowingly release their phone number have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752, 8796 ¶ 31 (Oct. 16, 1992).

- 6 -

This definition of consent has been reaffirmed in subsequent FCC Orders. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564, ¶ 9 (Jan. 4, 2008) ("we conclude that the provision of a cellphone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent…"). The Ninth Circuit Court of Appeals has recently confirmed that the courts are required to follow this interpretation of "prior express consent" by the FCC. *See Baird v. Sabre, Inc.*, 2016 WL 422778 at *1 (9th Cir. Feb. 3, 2016) ("Baird expressly consented to the text message in question when she provided Hawaiian Airlines with her cell number.")

Further, the FCC has ruled that the consent provided to a creditor includes consent to an agent of the creditor – *to wit* - a debt collector such as FCN, collecting on behalf of the creditor. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 564; *Hudson, supra*, 2014 WL 2892290 at *3.

By providing his cellular telephone number to Park Water Co. in connection with his account, Plaintiff consented to receiving the calls from FCN.

Plaintiff may assert that he did not provide Park Water Co. and, consequently FCN, with prior express consent because he did not provide his cellular telephone number when the account was originally set-up. But, plaintiff's theory is not supported by case law and has been widely rejected by the majority of federal courts who have considered the issue, including the Central District of California. As the Honorable Judge Gutierrez recognized, less than a year ago:

> Although the Court recognizes that the 2008 FCC Order is less than clear, (citation omitted), it believes the 2008 FCC Order is best interpreted as allowing express prior consent to arise from phone numbers provided after the debt was originated. As multiple courts have noted, nothing in the language of the 2008 FCC Order specifically states that "the transaction that resulted in the debt owed" refers solely to the origination of the loan.

- 7 -

*See, e.g., Hill v. Homeward Residential Inc.,* 799 F.3d. 544, 551 (6th Cir. 2015) ["[T]he FCC never uses the words *initial* or *original* before 'transaction'. It instead says that the debtor has given his consent when he gives his number '*during the transaction*' that involves the debt (i.e., 'regarding the debt')." (citation omitted); *Ebling v. ClearSpring Loan Servs., Inc.,* 106 F.Supp.3d 1002, 1005 n.3 (D.Minn. 2015) ("The phrase 'during the transaction' is not limited to the initial contact between the creditor and debtor.").

*Haysbert v. Navient Solutions, Inc.,* 2016 WL 890297 at *8 (C.D.Cal., March 8, 2016); *see also Hills v. Homeward Residential, Inc.,* 799 F.3d. 544, 552 (6th Cir. 2015) ["While debtors may "[t]ypically give their cellphone number "as part of a credit application" at the beginning of the creditor-debtor relationship, it doesn't *have* to be that way." (italics in original; citations omitted)]; *Lawrence v. Bayview Loan Servicing, LLC,* 152 F.Supp.3d 1376, 1381 ["[e]ach time Plaintiff sent a letter to Defendant containing his cellular telephone without placing any limitation on how the number could be used or instructing Defendant not to call him, he was expressly consenting to calls from Defendant."]; *Selby v. LVNV Funding, LLC,* 2016 WL 6677928 at *7 (S.D.Cal. June 22, 2016)["Accordingly, the definition of prior express consent is not limited to circumstances where a party had provided the cell phone number in the underlying transaction giving rise to the debt owed. Rather, prior express consent to future calls at a particular cell phone number may also be given in subsequent communications which a creditor or as part of the debt collection process."].

    3)   <u>Plaintiff did not revoke consent</u>.  Although Plaintiff claims that he told FCN to stop calling him, this is not true and contradicted by FCN's account history. (Exhibit 4.)   The account history details all of the communications and attempted communications between FCN and Plaintiff.   The account history demonstrates that FCN never had a conversation with plaintiff and that Plaintiff never asked FCN to stop calling him and never told FCN that he revoked consent to be called.  (Exh. Nos. 4 and 5: Collection Notes for Jay Littlejohn and Jamil Littlejohn.)

- 8 -

Plaintiff admits that he never returned a call from FCN and never sent FCN any letters, fax, e-mail or other correspondence at all (let alone such correspondence revoking consent).  (Deposition of Littlejohn, pp.18:25-19:12.)

4)   <u>The October 26, 2015 letter does not revoke consent.</u>  It is anticipated that Plaintiff will argue that his prior express consent to be called by FCN was revoked when FCN received the October 26, 2015 "cease-and-desist" letter from Kimmel & Silverman.  But, this is not so as the October 26, 2015 letter did not put FCN on notice of Plaintiff's representation. *Saunders v. NCO Financial Systems, Inc.*, 910 F.Supp.2d 464 (E.D.N.Y. 2012) is instructive in this regard.

In *Saunders*, plaintiff opened an account with PACER. Plaintiff did not open the account in his own name; rather it was opened in the name of "PLS".  At some point, plaintiff's account with PACER became delinquent and was assigned to defendant for collections. *Saunders, supra,* 910 F.Supp.2d at 466.

After defendant placed collection calls to plaintiff's cellphone (which was provided by plaintiff when the PACER account was established), plaintiff sent defendant a letter requesting that it stop contacting him about "above referenced debt". *Saunders, supra*, 910 F.Supp.2d. at 466. Plaintiff wrote the letter in the name of "Patrick Saunders" – not "PLS" which was the name on the account. *Ibid.*

Based on the information supplied in the letter, defendant wrote plaintiff notifying him that it could not locate his account and that it needed more information. *Saunders, supra*, 910 F.Supp. at 466. Plaintiff initially refused to provide defendant with any further identifying information. *Ibid.*

Plaintiff brought an action against defendant for violation of the TCPA and FDCPA – specifically, among others, 15 U.S.C. § 1692c(a). Plaintiff's TCPA theory rested on the premise that his March 16, 2011 letter in the name of "Patrick Saunders" revoked his prior express consent to be called. *Saunders, supra*, 910 F.Supp.2d at 467-468. Plaintiff premised his entire case on the assumption that defendant could have or

- 9 -

should have located his account based on the limited information provided. *Id.* at 468. In granting defendant's motion for summary judgment, the court rejected plaintiff's contentions that the letter was factually sufficient to revoke plaintiff's prior express consent:

> Factually, the theory fails because ***neither letter gave NCO sufficient information to identify the account. All plaintiff had to write was that NCO should look for an account named "PLS" or at least give the address or cell phone number that he had given PACER when registering for his account***. For whatever reason, he chose not to. The fact that Patrick Saunders of Brooklyn wished to revoke prior consent was meaningless; it may as well have been John Smith of Tacoma making the request.  No amount of effort on NCO's part would have disclosed that Patrick Saunders of Brooklyn was actually PLS of Maryland.
>
> ***
>
> Plaintiff's entire case is premised on the assumption that NCO could have or should have found his named based on the contact person listing of "P. Saunders". But, I see no reason why NCO must alter its search system to do more than it did. First, ***Plaintiff has complete knowledge of the account information and could have easily identified it is he wanted to***. Second, the facts that the management of an account debtor may list an employee or subordinate as the "contact person" for the account does not mean the name of the subordinate is crucial identifying information that a collection agency must match with a debtor who, for undisclosed reasons, declines to identify the account with which he is connected. ***Whether this is a deliberate problem that plaintiff created or one that he simply neglected to fix, the problem was entirely of his own making, not that of NCO.***

*Saunders, supra,* 910 F.Supp.2d at 468 (emphasis added).

Here, Plaintiff's TCPA revocation claim based on the October 26, 2015 "cease-and-desist" letter fails just as the revocation claim in *Saunders, supra,* did. This is so because, like *Saunders*, Plaintiff failed to include any identifying information which

- 10 -

would lead FCN to the logical conclusion that the account it was collecting for Park Water Co. in the name of "Jay Littlejohn" was for "Jameel Littlejohn." Like *Saunders*, the October 26, 2015 "cease-and-desist" letter did not identify the cellular telephone number FCN was calling, the name of the creditor or, the actual name which Plaintiff opened the account under, which was "Jay Littlejohn." In fact, although Plaintiff's name is "Jamil" Littlejohn, the "cease-and-desist" letter spelt Plaintiff's name as "Jameel" – not "Jamil" and certainly not "Jay".

The absence of any further identifying information (including the incorrect spelling of Plaintiff's name or the name on the Park Water Co. account) is made more egregious by the fact that Plaintiff's attorney sent FCN the letter, not Plaintiff, himself.

Again, like *Saunders*, FCN has testified that it can only search a debtor's account by last name, first name or by the debtor's address and/or social security number – among other things. (Morado Depo. p. 18:11-17.) But, the incorrect name on the account was given (and Plaintiff's incorrect legal name, as well). The address listed in the "cease-and-desist" letter did not match any account in FCN's system. No social security number was given nor was an account number provided. In short, FCN had no information that "Jay Littlejohn" was actually "Jameel Littlejohn".

Accordingly, FCN is not required to "guess" that "Jay Littlejohn" is "Jameel Littlejohn", especially when "Jameel Littlejohn" is not Plaintiff's legal name. The October 26, 2015 letter was patently insufficient to put FCN on notice of Plaintiff's purported revocation. *Saunders, supra*, 910 F.Supp.2d at 470 ["***As to the letters, I have already held that NCO had no duty to read plaintiff's mind and match his letters to an account that listed a different name and address.***" (emphasis added.)]; *see, e.g., In re Runyan,* 530 B.R. 801, 807 (M.D.FL. 2015) [notification of attorney representation does not revoke prior express consent].

5) Plaintiff has not suffered an "injury-in-fact". As explained above, Plaintiff must establish that has Article III standing to pursue his TCPA claim. *Spokeo, supra*,

- 11 -

136 S.Ct. at 1547.   Plaintiff's Article III standing consists of three elements: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant and, (3) that it is likely to be redressed by a favorable judicial decision. *Ibid.*

Here, Plaintiff will not be able to establish the first element of his Article III standing, i.e. that he suffered an injury in fact. Simply put, Plaintiff has no evidence that he suffered an "invasion of a legally protected interest" that is "actual" and not "conjectural or hypothetical." *Spokeo, supra*, 136 S.Ct. at 1547-1548; *Romero, supra*, -- F.Supp.3d. --, 2016 WL 418099 at *2.

First, Plaintiff has suffered no financial injury. (*Deposition of Littlejohn*, pp.44:14-45:1.)

Second, Plaintiff's alleged emotional distress does (1) not rise to the level of an injury in fact and, (2) is not "fairly traceable" to the alleged auto-dialed calls placed by FCN to the cellular telephone number plaintiff provided to Park Water Co.

As admitted, FCN placed calls to Plaintiff for the purpose of collecting a debt which Plaintiff owed to Park Water Co. Debt collection by its very nature, often causes a debtor to suffer some degree of emotional distress. *Costa v. National Action Financial Services,* 634 F.Supp.2d 1069, 1079 (E.D.Cal. 2007) ["in collection cases, courts have long recognized that the very nature of collection efforts often cause a debtor to suffer emotional distress."]; *Bundren v. Superior Court*, 145 Cal.App.3d 784, 789 ["At the outset, we recognize that the attempted collection of a debt, by its very nature, often causes the debtor to suffer emotional distress."]; *see also Ross v. Creel Printing & Publishing Co.*, 100 Cal.App.4th 736, 746-747 (2002). Plaintiff has suffered (if at all) nothing more than the garden-variety emotional distress that accompanies the collection of a debt.

Moreover, the specific actual facts of this case (which include Plaintiff never actually speaking with FCN) reveal that any harm suffered by Plaintiff was not connected with the alleged TCPA violation(s), itself. Again, FCN was acting as a third-

party debt collection agency and collecting on a debt Plaintiff owed to Park Water Co. FCN was calling Plaintiff because Plaintiff provided his number to Park Water Co. with regards to his account; thus, evidencing his prior express consent. (*See* Exh. Nos. 6 and 7.) Although, Plaintiff may claim that the collection calls were stressful, etc., such emotional distress was not caused by FCN's use of an alleged ATDS to call Plaintiff. Plaintiff's emotional distress (if any) was nothing more than the stress caused by being in collections. Plaintiff would have been no better off had FCN dialed his telephone number manually. *See Romero, supra*, --F.Supp.3d--, 2016 WL 4184099 at *6. "In other words, to use the language from *Spokeo*, Plaintiff's alleged concrete harm was divorced from the alleged violation of the TCPA." *Ibid.*

Alternatively, given that the evidence will show that Plaintiff never orally revoked his prior express consent, the two calls placed to the at-issue cellular telephone number after October 26, 2015 (assuming the October 25, 2016 letter put FCN on notice of attorney-representation) also caused plaintiff to suffer no injury in fact as required. Rather, any alleged injury would be merely "conjectural" or "hypothetical". *See Spokeo, supra*, 136 S.Ct. at 1547-1548; *Romero, supra*, -- F.Supp.3d. --, 2016 WL 418099 at *2. *Romero, supra*, is instructive in this regard.

In *Romero, supra*, plaintiff alleged that defendant violated the TCPA by calling her over 200 times. *Romero, supra*, --F.Supp.3d --, 2016 WL 4184099 at *4. The *Romero* Court identified three categories of calls: (1) calls that plaintiff did not hear ring on her cell phone; (2) calls that plaintiff heard ring but, did not answer; and, (3) calls plaintiff answered. *Id.* at *4-5. With regards to the first to categories of calls, the Southern District found that the plaintiff must have at least been aware of the calls in order to allege a plausible "injury-in-fact". *Romero, supra*, -- F.Supp.3d.--, 2016 WL 4184099 at *4 ["Accordingly, because Plaintiff has not, and likely could not, present evidence of any injury in fact as a result of the calls placed by Defendants to Plaintiff's cell phone of which Plaintiff was not aware, Plaintiff lacks standing to assert a claim for

- 13 -

a TCPA violation based on any of these calls"].

As the plaintiff in *Romero, supra,* lacked Article III standing, so does Plaintiff, here. This is so because Plaintiff has never alleged that he answered either call and has admitted that he did not know about the two calls placed to his cellular phone after the October 26, 2015 letter until his counsel subpoenaed his cellular telephone records. (*See, e.g.,* Exh. 16: Plaintiff's Memorandum of Points and Authorities in Support of Motion to Amend [admitting that the alleged offending calls were only discovered during litigation] Exh. 17, p. 3:4-9: Plaintiff's Reply Brief in Support of Motion to Amend ["At the time the Plaintiff filed his Complaint, he did not include a count for violation of § 1692c(a)(2) of the FDCPA which prohibits a debt collector from contacting a consumer whom he knows is represented by counsel, because Plaintiff believed all calls from Defendant ended in October 2015 prior to Defendant's receipt of Plaintiff counsel's letter."]. )

In sum, Plaintiff will not be able to meet his preliminary burden to prove that he has the requisite Article III standing.

## Plaintiff's Claim Under The FDCPA

1)   <u>Section 1692d</u>.  FCN did not harass, oppress or abuse Plaintiff.  FCN called Plaintiff approximately 75 times between April 2014 and November 2015 a period of 19 months.  This is an average of less than four calls per month.  FCN's account history, a document that is maintained in the ordinary course of business that includes all communications between FCN and the consumer, confirms that FCN never had any telephone conversation with Plaintiff, that Plaintiff never asked for an explanation about the debt and that Plaintiff never asked FCN to stop calling him.  (Exhibit 4.)  Plaintiff admits that he never sent FCN anything in writing asking for information or asking it to stop calling him.  Plaintiff admits that he never returned any call by FCN.  (*Deposition of Littlejohn*, pp.18:25-19:12.)

The FDCPA does not prohibit multiple phone calls in one day or limit the number

- 14 -

of calls that may be made per week. *Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218 (E.D.Ca 2010) [daily or near daily calls does not constitute actionable harassment]; *Jiminez v. Accounts Receivable Mgmt.,* 2010 WL 5829206 *6 (C.D. Cal. 2010) [defendant granted summary judgment where defendant placed 69 calls over a 115 day period and placed more than 2 calls in one day]; *Tucker v. The CBE Group Inc.,* 710 F.Supp.2d 1301, 1305-1306 (M.D. Fla. 2010) [57 calls to plaintiff including 7 calls in one day to not constitute actionable harassment].

Instead, a high frequency of calls is only actionable when it demonstrates an *intent* to annoy, abuse or harass.   Plaintiff must also allege that the purpose of the calls were to annoy, abuse, or harass him as opposed to simply attempting to reach him to discuss the underlying debt.  *See Jones v. Rash Curtis*, 2011 WL 2050195, *3 [court granted summary judgment upon finding that there was no triable issue of fact that Defendant initiated the phone calls with the intent to harass].

2)   Section 1692d(5).  FCN did not call Plaintiff "repeatedly or continuously." Again 75 calls over a 19 month period does not amount to repeatedly and continuously. Further, FCN did not call with the *intent* to annoy, abuse or harass Plaintiff.  There is no evidence that FCN intended to harass Plaintiff.  Plaintiff does not complain about the content of any call and does not claim that FCN made harassing or abusive statements, threats or used inappropriate language.  The pattern of calls is not sufficient to even give rise to an inference of intent to harass.  Section 1692d(5) is one of the few provisions of the FDCPA that has an intent requirement.  *Clark v. Capital Credit & Collection Services, Inc.,* 460 F.3d. 1176, n. 11 (9th Cir. 2006) [identifying § 1692d(5) of the FDCPA as an exception to the strict liability].

3)   Section 1692f.  The same evidence defeats plaintiff's claims under section 1692f.  In short, FCN did not engage in unfair or unconscionable attempts to collect the debt.

4)   Section 1692c(a)(2). Plaintiff's 15 U.S.C. § 1692c(a)(2) claim is predicated

- 15 -

on the same erroneous assumption as his one of his TCPA "revocation" claims – *to wit* – the October 26, 2015 "cease-and-desist" letter put FCN on notice that Plaintiff was represented by Kimmel & Silverman with respect to the Park Water debt. Accordingly, it must fail because the October 26, 2015 "cease-and-desist" letter did not put FCN on notice of Plaintiff's representation as it did not properly identify plaintiff or his account. *See Saunders, supra,* 910 F.Supp.2d at 469-470 [Plaintiff's §1692c(a) claim fails because letter did not sufficiently identify the debtor or the debtor's account].

Additionally, as further explained above, with regards to Plaintiff's claim for alleged violations of the TCPA, Plaintiff will be unable to show that he suffered an "injury-in-fact" as required to confer Article III standing upon him. *See Spokeo, supra,* 136 S.Ct. at 1547-1548; *Romero, supra,* -- F.Supp.3d. --, 2016 WL 418099 at *2. Plaintiff did not learn of the alleged offending calls to his cellular telephone by FCN until this litigation had already commenced. (*See, e.g.,* Exh. 16; Exh. 17, p. 3:4-9.)

<u>Plaintiff's Claim Under The Rosenthal Act</u>

Plaintiff's claim under the Rosenthal Act (Civil Code § 1788.17) is based entirely on his FDCPA claims and fails for the same reasons.

**(d) Summary of affirmative defenses.**

**Affirmative defense no. 1:** Bona Fide Error. Defendant has no civil liability under the Rosenthal FDCPA, Cal. Civ. Code §§ 1788, *et seq.*, pursuant to Cal. Civ. Code § 1788.30(e) or the federal FDCPA pursuant to 15 U.S.C. § 1692k(c) as any violation was unintentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

**Affirmative defense no. 2:** Statute of Limitations (FDCPA). An action to enforce liability must be brought "within one year from the date on which the violation occurs". 15 U.S.C. § 1692k(d).

**Affirmative defense no. 3:** Statute of Limitations (Rosenthal Act). An action for violations of the Rosenthal Act may be brought "within one year from the

- 16 -

date of the occurrence of the violation." Civil Code § 1788.30(f).

**Affirmative defense no. 4:** Defendant had prior express consent to call plaintiff's cellular telephone.[2]

**(e) Elements required to establish defenses.**

<u>Bona Fide Error</u>

1. The violation was not intentional

2. Defendant maintained procedures reasonably adapted to prevent the alleged violation.

3. The error occurred despite the maintenance of those procedures.

<u>Statute of Limitations (FDCPA)</u>

1. The alleged violation took place one year before the Plaintiff's original complaint was filed.

<u>Statute of Limitations (Rosenthal Act)</u>

1. The alleged violation took place one year before the Plaintiff's original complaint was filed.

<u>Prior Express Consent (TCPA)</u>

1. Defendant had plaintiff's consent to call his cellular telephone.

**(f) Evidence relied upon to support affirmative defenses.**

<u>Bona Fide Error</u>

Defendant has policies and procedures in place regarding ceasing communication with a debtor. (Exh. 11: Cease Communication Policy, Procedure and Work Instruction.) Defendant's policies are written policies on which its employees are trained. Further, Defendant audits its collectors to ensure compliance with its policies.

Defendant has policies and procedures in place regarding notice that a consumer is represented by an attorney. (Exh. 13: Attorney Contact Policy, Procedure and Work

---

[2] As stated above, defendant asserts this is properly an element of plaintiff's TCPA claim, however, as there is a split in authority as to whether consent is an element of the claim or affirmative defense, defendant identifies it here as well.

DEFENDANT FINANCIAL CREDIT NETWORK, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT

Instruction.)   Defendant's policies are written policies on which its employees are trained.  Further, Defendant audits its employees to ensure compliance with its policies.  Here the policy was followed, the attorney information was entered into the account and the consumer's telephone number and address was removed so that no further contact could be made.  But due to the deliberately misleading nature of the attorney letter, FCN identified an account for a "Jamil Littlejohn" instead of "Jay Littlejohn" and, thus, placed two calls to Plaintiff.

### Statute of Limitations (FDCPA and Rosenthal Act)

Plaintiff filed his original complaint with the United States District Court, Central Division of California on December 21, 2015. (Exh. 1: Complaint.) Accordingly, any conduct which occurred more than one-year prior to the filing of Plaintiff's complaint – *to wit* – December 21, 2014-  is barred by the statute of limitations contained in 15 U.S.C. § 1692k(d) and Civil Code § 1788.30(f). *Naas v. Stolman*, 130 F.3d. 892, 892 (9th Cir. 1997) [statute of limitations begins to run on the date of the violation].

### Prior Express Consent

Please see consent discussion above regarding elements of Plaintiff's TCPA claims.

**(g) Third parties**

Not applicable.

**(h) Anticipated evidentiary issues.**

None at this time.

**(i) Issues of law**

1. Whether providing a telephone number in connection with an account is prior express consent to be called on the account.

2. Whether a "predictive dialer" or other auto-dialer that does not have the capacity to generate, store and call random or sequential telephone numbers is an "automatic telephone dialing system" for purposes of the

- 18 -

TCPA.

> 3. Whether plaintiff suffered an injury-in-fact so as to have Article III standing to assert any claims.

**2.      Bifurcation**

Defendant does not request bifurcation of any issues or phases of trial.

**3.      Jury Trial**

Plaintiff's claims are properly tried to a jury.  Both parties have timely demanded trial by jury.

**4.      Attorney's fees**

The FDCPA and Rosenthal Act both provide that a successful plaintiff is entitled to recover reasonable attorney fees incurred in enforcing liability under the statutes.  15 U.S.C. § 1692k(a)(3); Cal. Civil Code § 1788.30(c).

Defendant submits that (1) Plaintiff will not be successful in enforcing liability under either statute and (2) given the facts of this case Plaintiff's attorney fees must be reduced for the dismissal of his abandoned claims and Plaintiff cannot recover the portion of attorney fees expending on pursuing his TCPA claims.

Defendant may recover attorney fees from Plaintiff under the FDCPA, if the Court determines that the action or claim was brought in bad faith and for purposes of harassment.  15 U.S.C. § 1692k(a)(3).  The standard for an award of fees under the Rosenthal Act is lower and the Court must only determine that the prosecution of the action was not in good faith.  Cal. Civil Code § 1788.30(c).

Here, Defendant asserts that Plaintiff's complaint and continued prosecution of the complaint is not in good faith and is for purposes of harassment.  Plaintiff has asserted numerous claims that were fabricated and unsupported by any objective evidence.  Plaintiff has now tried to abandon some of his claims that have been proven to be false, but these false claims evidence the lack of good faith and improper purpose behind this lawsuit.

- 19 -

Attorney fees are not available under the TCPA.

5.   **Abandonment of Issues**

Plaintiff has abandoned his FDCPA claims under 15 U.S.C. § 1692c(a)(1), § 1692c(a)(3) and §1692g.

Dated: January 9, 2017

ELLIS LAW GROUP LLP

By /s/ *Amanda N. Griffith*
Amanda N. Griffith
Attorney for Defendant
FINANCIAL CREDIT NETWORK, INC.

DEFENDANT FINANCIAL CREDIT NETWORK, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT

**CERTIFICATE OF SERVICE**

I, Cheri Bowden, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause.   My business address is 740 University Avenue, Suite 100, Sacramento, CA 95825.

On January 9, 2017, I served the following document(s) on the parties in the within action:

**DEFENDANT FINANCIAL CREDIT NETWORK, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**

| | |
|---|---|
| **X** | **VIA ELECTRONIC SERVICE**:  The above-described document(s) will be delivered electronically through the Court's ECF/PACER electronic filing system, as stipulated by all parties to constitute personal service, to the following: |

| | |
|---|---|
| Amy L. Bennecoff<br>Rachel R. Stevens<br>Kimmel & Silverman, P.C.<br>30 East Butler Pike<br>Ambler, PA 19002 | Attorneys for Plaintiff<br>Jamil Littlejohn |

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on January 9, 2017.

By Cheri Bowden
Cheri Bowden

DEFENDANT FINANCIAL CREDIT NETWORK, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT